FILED

2021 Aug-30 PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **JAMIE JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **3:20-CV-01923-AKK** |
| | ) | |
| **COLBERT COUNTY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case arises from an alleged misidentification and subsequent arrest and detention of Jamie Johnson by law enforcement in Colbert County. The court has for consideration Colbert County's and Sheriff Williamson's motions to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See docs. 23, 25. The motions are fully briefed, docs. 24, 26, 42, 43, and 45, and ripe for review. For the reasons stated more fully below, both motions are due to be granted.

## I.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does

not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citing *Twombly*, 550 U.S. at 557).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal when a complaint fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II.[1]

On January 31, 2020, as Johnson walked near his home in Colbert County, Alabama, an unnamed deputy with the Colbert County Sheriff's Office approached him in a police vehicle and asked for his identification. Doc. 22 at ¶¶ 4, 10, 11. Because Johnson had left his wallet at home, he provided the deputy with his Social Security number, which the deputy used to perform a National Crime Information Center (NCIC) check on Johnson. *Id.* at ¶¶ 11, 12. This check apparently revealed an outstanding warrant for the arrest of an individual named Jamie Johnson, and Johnson was subsequently arrested. *Id.* at ¶ 12. Allegedly, neither the unnamed deputy nor an unnamed Colbert County Sheriff's Office dispatcher did anything "to verify the information returned from NCIC before arresting [him]," in violation of NCIC policy. *Id.*

Johnson was taken to Colbert County Jail, where employees there continued to detain him without verifying that he was the individual identified in the NCIC check. *Id.* at ¶ 13. Unnamed employees at the jail "placed Johnson into the 'drunk tank,'" stripped him naked, and failed to "provide[] a bed or proper food for the first

---

[1] The plaintiff's allegations are presumed true for purposes of Rule 12(b)(6). *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)) ("When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'"). As such, the facts are taken from the plaintiff's amended complaint, doc. 8. However, legal conclusions unsupported by factual allegations are not entitled to that presumption. *See Iqbal*, 556 U.S. at 662.

five days of his stay" in jail. *Id.* at ¶ 15. Johnson further alleges he was not given

clothing until seven days after his arrest, when he was "handcuffed to a bench in the

basement of the jail" for his bail hearing. *Id.* at ¶¶ 16, 17. The judge "handed

Johnson a piece of paper and was the only person to read Johnson his rights." *Id.* at

¶ 17. After 18 days, Johnson satisfied his bond and was released. *Id.*

In the course of discovery in the underlying criminal action, Johnson's

attorney was provided with the arrest warrant obtained during the NCIC check. *Id.*

at ¶¶ 14, 19 (citing Ex. A). This warrant related to drug offenses apparently

committed by a woman in Sheffield, Alabama, four years prior to Johnson's arrest.

*Id.* This woman, also named Jamie Johnson, had a different Social Security number

than Johnson and was living in Tennessee. *Id.* As a result, the court dismissed the

criminal case against Johnson and recalled all outstanding warrants and grand jury

indictments associated with the case. *Id.* at ¶ 21 (citing Ex. D).

**III.**

Johnson raises federal and state claims against Colbert County, Colbert

County Sheriff Frank Williamson, the unnamed deputy, the unnamed dispatcher, and

10 unnamed John Does. *See id.* at 1–2. Johnson pleads that all of the defendants

engaged in a conspiracy to violate his Fourth Amendment rights (Count I), that the

unnamed deputy and unnamed dispatcher violated his Fourth Amendment rights

(Count II), that all of the defendants engaged in a conspiracy to violate his Eighth

4

Amendment rights (Count III), that all of the defendants deprived him of his Eight Amendment rights (Count IV), and that Colbert County and Sheriff Williamson are liable under 42 U.S.C. § 1983 for failing to properly train their employees in violation of the Fourth and Eighth Amendments (Count V). *See id.*[2] Johnson also pleads state-law claims for false arrest and imprisonment (Count VI), malicious prosecution (Count VII), and intentional and/or negligent infliction of emotional distress (Count VIII). *See id.*[3] Two of the defendants—Colbert County and Sheriff Williamson—have moved to dismiss the claims against them.

In its brief in support of its motion to dismiss, Colbert County primarily argues that Alabama counties "cannot be held liable for the actions of a deputy sheriff because [they] lack any supervisory authority over law enforcement officials." *See* doc. 23 at 1–2. And for his part, Sheriff Williamson principally maintains that he is entitled to qualified immunity with regard to the § 1983 claims and sovereign immunity under the Alabama Constitution with regard to the state-law claims. *See*

---

[2] It is unclear whether Johnson pleads the conspiracy claims, Counts I and III, under 42 U.S.C. § 1983 or 42 U.S.C. § 1985. *See* doc. 22 at 2 ("This action is brought under 42 U.S.C. §1983, 1985, 1988 and the 4th and 8th Amendments to the United States Constitution."). However, Johnson has not alleged that he was an officer of the United States, *see* 42 U.S.C. § 1985(1), that the defendants conspired to deter him from testifying in or attending court, *see id.* § 1985(2), or that there was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" behind the conspirators' actions, *see id.* § 1985(3); *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 627 (11th Cir. 1992) (internal quotation marks omitted). The court thus understands Johnson to allege conspiracy claims under § 1983.

[3] Johnson labels these state-law claims Count I, II, and III, respectively. *See* doc. 22 at 12–14. However, given the numerical ordering of the federal-law claims, the court labels these state-law claims Counts VI, VII, and VIII, accordingly, to avoid any confusion.

doc. 25 at 1–2.  Sheriff Williamson also asserts that the "intracorporate conspiracy doctrine" bars the federal conspiracy claims against him.  *Id.* at 19–20.  The court addresses each of the two defendants' arguments in turn.

## A.

Colbert County argues that Johnson's claims against it rest "on an erroneous presumption that Alabama counties have supervisory capacity or authority to exercise control over law enforcement officials."  Doc. 23 at 5.   In particular, Colbert County maintains that it lacks authority over the Colbert County Sheriff's Office, and that Alabama sheriffs and deputy sheriffs are state, not county, employees, so the County cannot be liable for the actions of the sheriff's office.  *Id.* at 6.

### 1.

*McMillian v. Monroe County* is instructive.  In *McMillian*, the Supreme Court held that the Monroe County sheriff represented Alabama, not the county, when he "act[ed] in a law enforcement capacity," which included investigating alleged criminal activity and maintaining evidence.  *McMillian v. Monroe Cty.*, 520 U.S. 781, 785–86 (1997).  This justified dismissal of McMillian's § 1983 claims against the county.  *See id.*  In reaching this conclusion, the Supreme Court was guided by two principles: first, that whether the sheriff acted for the state or the county was not "all or nothing," but rather, a contextual inquiry about the function in question; and second, that whether an official "speak[s] with final policymaking authority" for a

state or local government rests on state law. *See id.* Reviewing the history of the Alabama Constitution, decisions by the Eleventh Circuit and the Alabama Supreme Court, and provisions of the Alabama Code, the Supreme Court concluded that "Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties." *Id.* at 793.

Interpreting *McMillian*, the Eleventh Circuit has held that, in determining whether an official is a state policymaker for purposes of § 1983, the inquiry depends on whether the official is acting for the state or the county on a particular issue, as defined by state law on a function-by-function basis. *Turquitt v. Jefferson Cty.*, 137 F.3d 1285, 1287 (11th Cir. 1998); *Abusaid v. Hillsborough Cty. Bd. Of Cty. Comm'rs*, 405 F.3d 1298, 1303–04 (11th Cir. 2005) (citing *Manders v. Lee*, 338 F.3d 1304, 1308–09 (11th Cir. 2003)). Likewise reviewing the Alabama Constitution, its legislative history, the Alabama Code, and decisions by Alabama courts, the Eleventh Circuit in *Turquitt* held that "an Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail." 137 F.3d at 1288. In addition, the Eleventh Circuit has recognized that "deputy sheriffs are immune from suit to the same extent as sheriffs because 'the deputy sheriff is the alter ego of the sheriff.'" *Young v. Myhrer*, 651 F. App'x 878, 880 (11th Cir. 2016) (citing *Hereford v. Jefferson Cty.*, 586 So. 2d 209, 210 (Ala. 1991)).

Taken together, these decisions dictate that Alabama sheriffs and deputy sheriffs act for the State, not any one county, when carrying out law enforcement duties or operating county jails. Johnson attempts to rebut this by asserting that his claims against the County do not arise from the actions of the Colbert County Sheriff's Office but rather from "[the County's] individual involvement" in the violation of Johnson's constitutional rights. Doc. 42 at 2. Johnson argues his allegations "were made to address the unconstitutional conduct of Colbert County where there was a policy that allowed for an individual to be arrested, detained, and prosecuted for crimes he did not commit." *See id.* at 3. But these allegations appear to pertain to the sheriff's law-enforcement functions and jail operations, not any actions on the part of the County itself. *Cf. McMillian*, 520 U.S. at 785–86; *Turquitt*, 137 F.3d at 1288. To the extent Johnson alleges claims against the County, they arise from conduct carried out by the sheriff's office, which acted as an arm of the State of Alabama when its officials and employees allegedly violated Johnson's constitutional rights. Thus, Johnson's § 1983 claims against Colbert County are due to be dismissed.

### 2.

Johnson also pleads state-law claims for false arrest and imprisonment, malicious prosecution, and intentional and/or negligent infliction of emotional

distress against the County.  *See* doc. 22 at 12–14.  Johnson's state-law claims against the County also cannot proceed.

In *McMillian*, the Supreme Court acknowledged *Parker v. Amerson*, in which the Alabama Supreme Court "held unequivocally that sheriffs are state officers, and that tort claims brought against sheriffs based on their official acts therefore constitute suits against the State, not suits against the sheriff's county."  520 U.S. at 789 (citing *Parker v. Amerson*, 519 So. 2d 442, 443 (Ala. 1987)).  Thus, "Alabama counties are not liable under a theory of *respondeat superior* for a sheriff's official acts that are tortious."  *Id.*   In *Turquitt*, the Eleventh Circuit recognized that, "while [Alabama] counties have certain responsibilities with respect to county jails, those responsibilities are clearly enumerated [under Alabama law] and relate only to maintaining the jail's physical plant and providing operational funding."  137 F.3d at 1291.    By contrast, Alabama sheriffs "have full responsibility for daily management of the jails, including inmate supervision, and they are not subject to county oversight in their performance of this responsibility."  *Id.* (citing ALA. CODE § 14-6-1; *King v. Colbert Cty.*, 620 So. 2d 623, 625 (Ala. 1993)).  As a result, an Alabama county cannot be liable for harm to those incarcerated because of improper operation of or negligent supervision over the jail, a realm the sheriff controls.  *Id.*

These decisions preclude Johnson from asserting state-law claims against the County for the alleged torts of the Colbert County Sheriff's Office.   Therefore, Johnson's state-law claims against the County are also due to be dismissed.

B.

Sheriff Williamson argues that qualified immunity bars Johnson's federal-law claims against him and that state-law immunity under the Alabama Constitution bars Johnson's state-law claims against him.   Doc. 26 at 1–2.   Sheriff Williamson also argues that the "intracorporate conspiracy doctrine" precludes Johnson's conspiracy claims against him.   *Id.* at 19–20.

1.

To support his qualified immunity defense, first, Sheriff Williamson argues that no constitutional violation was committed.   *Id.* at 7.   In addition, Sheriff Williamson argues that Johnson does not plausibly allege that Sheriff Williamson committed a constitutional violation because his subordinates' actions, not his own actions, form the basis of Johnson's § 1983 claims.   *Id.* at 10.   Finally, Sheriff Williamson argues that neither he nor his subordinates violated "clearly established law."   *Id.* at 14.

a.

"Qualified immunity shields public officials from suits against them in their individual capacities for torts committed while performing discretionary duties

10

unless the tortious act violates a clearly established statutory or constitutional right."
*Zivojinovich v. Barner*, 525 F.3d 1059, 1071 (11th Cir. 2008).  Recognizing that law-enforcement officers often rely on "imperfect information to make snap judgments," federal courts developed the doctrine to render immune "all but the plainly incompetent or one who is knowingly violating the federal law."  *See Patel v. City of Madison*, 959 F.3d 1330, 1337 (11th Cir. 2020) (internal quotation marks omitted).

To invoke the doctrine, an officer "must first demonstrate that he was acting within the scope of his or her discretionary authority when the challenged action occurred."  *Id.*  "The term 'discretionary authority' 'include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority.'"  *Id.* (quoting *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)).  In *Patel*, the Eleventh Circuit found that the officer satisfied this requirement when he performed a "takedown" of the plaintiff "while on duty as a police officer conducting investigative functions."  *Id.*

This court likewise finds this requirement satisfied because Sheriff Williamson and his subordinates were engaged in on-the-job arrests and detention pursuant to their investigative functions at the time of the alleged unconstitutional conduct.  The burden thus shifts to Johnson to sufficiently allege (1) a violation of his constitutional rights and (2) that these rights were "clearly established" at the

11

time of the misconduct.  *See Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

b.

To hold a supervisor responsible under § 1983 for constitutional violations committed by subordinates, a plaintiff must show that either "(1) the supervisor personally participated in the constitutional violation, or (2) there is a causal connection between the supervisor's actions and the constitutional violation." *Quinette v. Reed*, 805 F. App'x 696, 705 (11th Cir. 2020).  A causal connection is established by "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

Moreover, a supervisor can be held liable under § 1983 for failing to train his employees "only where the failure amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *Keith v. DeKalb Cty.*, 749 F.3d 1034, 1052 (11th Cir. 2014) (citing *Belcher v. City of Foley*, 30 F.3d 1390, 1397 (11th Cir. 1994)).  "To establish that [a] supervisor was on actual or constructive notice of the deficiency of training, [a] pattern of similar constitutional violations by untrained employees is ordinarily necessary." *Id.* (citing *Connick v. Thompson*, 563 U.S. 51, 58 (2011)) (internal quotation marks omitted).  Thus,

Johnson must plausibly allege, first, that Sheriff Williamson's subordinates committed a constitutional violation and, second, that Sheriff Williamson's status as their supervisor renders him liable under § 1983.

i.

Johnson first alleges that the unnamed deputy and unnamed dispatcher unlawfully arrested him without probable cause in violation of the Fourth Amendment. *See* doc. 22 at 7–8. "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." *Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002) (quoting *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996)). However, "[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Id.* (quoting *Hill v. California*, 401 U.S. 797, 802 (1971)). This "reasonable mistake" standard applies to § 1983 actions when the police have a valid warrant to arrest one individual but misidentify and mistakenly arrest someone else. *Id.*

In *Rodriguez*, the Eleventh Circuit concluded that, in determining "what constitutes an unreasonable seizure due to a mistaken identification and arrest under a valid warrant in the field," courts must "evaluate the totality of the circumstances surrounding the arrest to determine its reasonableness." *Id.* at 1346–47. There, the mistaken arrestee's identifying information "was identical" to the information listed

13

in the warrant "in four critical respects: same name, same sex, same age, and same race." *Id.* Further still, the two individuals "had similar Social Security numbers," "had addresses in neighboring towns," and "were born in the same state." *Id.* Finally, the arrestee had "no fewer tattoos" than the individual named in the warrant, and "many of the tattoos were in the same locations." *Id.* Indeed, there was but one "material" difference: the mistaken arrestee said he was 5'11" tall, and the warrant listed the other individual as 5'6". *Id.* The Eleventh Circuit thus concluded that "a mistaken estimate of no more than five inches does not equal a constitutional violation," and so the officers "committed no constitutional violation upon which to base a section 1983 constitutional false-arrest claim." *Id.* at 1348–49.

In *United States v. McDonald*, the Fifth Circuit held that an officer had probable cause to arrest McDonald because the officer had seen an FBI wanted flyer on McDonald; received information from a reliable informant connecting McDonald to a surveilled residence; obtained a physical description, a photograph, fingerprints, and aliases of McDonald; and obtained an NCIC printout showing there was an outstanding warrant for McDonald's arrest. 606 F.2d 552, 553–54 (5th Cir. 1979).[4] Noting that "cases uniformly recognize that NCIC printouts are reliable enough to form the basis of the reasonable belief which is needed to establish probable cause

---

[4] The Eleventh Circuit has adopted as binding precedent decisions handed down by the Fifth Circuit prior to September 30, 1981. *United States v. Saunders*, 572 F. App'x 816, 818 n.2 (11th Cir. 2014) (citing *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)).

14

for arrest," the Fifth Circuit determined that viewing both a recent NCIC printout and an FBI wanted flyer on McDonald "clearly" gave the officer probable cause to arrest him. *Id.*

In this case, after the unnamed deputy or unnamed dispatcher ran Johnson's Social Security number through the NCIC index, the NCIC returned a "hit" for Johnson, incorrectly revealing an outstanding warrant for his arrest. *See* doc. 22 at 3. Allegedly, the unnamed deputy and unnamed dispatcher "did nothing to verify the information returned from NCIC before arresting Johnson." *Id.* It is true that relying on the arrest warrant for a woman named Jamie Johnson, of Tennessee, with a different Social Security number, would probably not constitute a "reasonable mistake" that independently provides probable cause. *Cf. Rodriguez*, 280 F.3d at 1347–48. However, Johnson does not allege that the officers relied on the mistaken arrest warrant; rather, Johnson alleges that they relied on the NCIC hit without verifying the information in the underlying arrest warrant. *See, e.g.*, doc. 22 at 3–4. Because Eleventh Circuit precedent dictates that officers may rely on NCIC hits to form probable cause, Johnson has not plausibly alleged a Fourth Amendment violation required for his § 1983 claim against Sheriff Williamson. Thus, Sheriff Williamson's motion to dismiss Johnson's § 1983 claim under the Fourth Amendment is due to be granted.

ii.

Johnson also alleges that the sheriff's office subjected him to cruel and unusual punishment in violation of the Eighth Amendment.  *See* doc. 22 at 8–9. However, "[w]hile the conditions under which a convicted inmate are held are scrutinized under the Eighth Amendment's prohibition on cruel and unusual punishment, the conditions under which a pretrial detainee are held are reviewed under the Due Process Clause of the Fourteenth Amendment." *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1344 (11th Cir. 2016); *see also Andujar v. Rodriguez*, 486 F.3d 1199, 1203 n.3 (11th Cir. 2007).  Johnson was detained at Colbert County Jail awaiting trial and was not convicted of any crimes.  Thus, Johnson has not stated an Eighth Amendment violation, and Sheriff Williamson's motion to dismiss Johnson's Eighth Amendment § 1983 claim is likewise due to be granted.

2.

Responding to Johnson's state-law claims, Sheriff Williamson argues that he is entitled to state-law immunity.  Doc. 25 at 16.  "Alabama generally grants sovereign immunity to its state executive officers, sheriffs, and deputy sheriffs pursuant to Article I, Section 14 of the Alabama Constitution of 1901." *Lockhart v. Franklin*, 777 F. App'x 387, 390 (11th Cir. 2019) (citing *Parker*, 519 So. 2d at 446); *see also Ex parte Sumter Cty.*, 953 So. 2d 1235, 1239 (Ala. 2006) (citing same).  As

a result, subject to certain exceptions,[5] "claims against sheriffs and deputy sheriffs are barred by the absolute immunity of Article I, § 14, of the Alabama Constitution of 1901 when the sheriffs or the deputies were acting within the line and scope of their employment." *Sumter Cty.*, 953 So. 2d at 1239 (internal citations and quotation marks omitted). However, "[n]o state officer, including a sheriff or deputy sheriff, can avoid tort liability simply by claiming that his mere status as a state official cloaks him with the state's constitutional immunity." *Lockhart*, 777 F. App'x at 390 (quoting *Ex parte Haralson*, 853 So. 2d 928, 933 (Ala. 2003)).

In *Ex parte Sumter County*, the Alabama Supreme Court held that a wrongful-death claim against a sheriff and deputy sheriffs was barred by state immunity because the sheriff and deputies were acting within the line and scope of their employment during the events leading to the incarcerated decedent's death. *Id.* In particular, "[a]ll of the events involving the sheriff and the deputy sheriffs were alleged to have occurred at the county jail," and neither the complaint nor the plaintiff's response to the motion to dismiss alleged any facts tending to show the officials were not working within their employment. *Id.* at 1240. By contrast, in *Lockhart*, the Eleventh Circuit refused to conclude, at the motion-to-dismiss stage,

---

[5] "Section 14 immunity is not applicable when an action is brought: (1) to compel state officials to perform their legal duties; (2) to compel state officials to perform ministerial acts; (3) to enjoin state officials from enforcing unconstitutional laws; (4) to enjoin state officials from acting in bad faith, fraudulently, beyond their authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act." *Parker*, 519 So. 2d at 445. However, Johnson has not alleged that any of the exceptions apply here.

that an Alabama sheriff was acting within the scope of her employment and therefore entitled to state-law immunity. 777 F. App'x at 391. There, the complaint alleged that the sheriff made slanderous statements to the press, intentionally interfered with the plaintiffs' contractual relations, and intercepted the plaintiffs' electronic communications. *Id.* In the sheriff's motion to dismiss, she "simply assert[ed]— without any factual support whatsoever—that she [was] entitled to state-law immunity because she serve[d] as a sheriff." *Id.* On such a "bare conclusory assertion," the Eleventh Circuit could not find that she was entitled to state-law immunity. *Id.*

Here, Johnson's allegations of false arrest/imprisonment, malicious prosecution, and intentional and/or negligent infliction of emotional distress against Sheriff Williamson arise out of an inaccurate NCIC check that led to the alleged unlawful arrest and the resulting prosecution and 18-day detention. Sheriff Williamson has specifically asserted that he is entitled to immunity for claims arising from these events because "[his] actions would fall within the scope of his employment as sheriff because conducting arrests clearly falls within the duties of Alabama sheriffs and their deputies." Doc. 25 at 17. The court agrees that the events alleged here fall within the sheriff's line and scope of his employment, entitling him to state-law immunity. Thus, Sheriff Williamson's motion is also due to be granted with respect to Johnson's state-law claims.

3.

Last, Sheriff Williamson asserts that the "intracorporate conspiracy doctrine" bars Johnson's § 1983 conspiracy claims against him.   Doc. 25 at 19.   The intracorporate conspiracy doctrine holds that "acts of corporate agents are attributed to the corporation itself," so a corporation "cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001).[6]  The doctrine applies to public entities.   *Dickerson v. Alachua Cty. Comm'n*, 200 F.3d 761, 768 (11th Cir. 2000); *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir. 1977), *aff'g*, 421 F. Supp. 12, 15 (E.D. La. 1976) (holding that the University of New Orleans and its officials constitute "a single legal entity which cannot conspire with itself"). An exception exists for "criminal conspiracies where the conduct violates the federal criminal code."   *Grider v. City of Auburn*, 618 F.3d 1240, 1263 (citing *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1034 (11th Cir. 2000)).[7]

---

[6] In *Denney*, the Eleventh Circuit rejected the plaintiffs' § 1985 conspiracy claims where the two alleged conspirators were employed by the city, the employees allegedly conspired in the firefighter promotion process, and "no outsiders [were] alleged to be involved."  247 F.3d at 1191. In particular, the subject of the conspiracy—to increase the role of subjective evaluations in the promotion process—"relate[d] to their performance of their official, not personal, duties" as city manager and fire department chief.  *Id.*

[7] In *Grider*, the Eleventh Circuit held that the intracorporate conspiracy doctrine barred the plaintiffs' § 1983 conspiracy claims where the two defendants "[were] both law enforcement officers," "[n]o outsiders [were] involved," and "[t]he subject of their alleged conspiracy— prosecution of [the plaintiff] by making a false bribery charge—involve[d] job-related functions well within [d]efendants' scope of employment as police officers."  618 F.3d at 1261.

Here, Johnson alleges that Sheriff Williamson and his co-defendants "conspired to deprive Johnson of the constitutional rights afforded to him" by the Fourth and Eighth Amendments by entering into an agreement to violate Johnson's civil rights and arrest and detain him unlawfully. *See* doc. 22 at 6, 8. However, the alleged acts were committed by law enforcement working within the same public entity—the Colbert County Sheriff's Office—and pertain to their official duties to investigate and prosecute violations of the law. *Cf. Denney*, 247 F.3d at 1191; *Grider*, 618 F.3d at 1261–62. The intracorporate conspiracy doctrine therefore precludes Johnson's conspiracy claims, and Sheriff Williamson's motion to dismiss is due to be granted on this ground as well.

## IV.

For the reasons stated above, Colbert County's and Sheriff Williamson's motions to dismiss, docs. 23 and 25, are **GRANTED**. Johnson's claims against these two defendants are **DISMISSED WITH PREJUDICE**.[8]

---

[8] In Johnson's responses to the motions to dismiss, Johnson asks to amend his complaint. Docs. 42 at 5, 43 at 19. However, a party seeking leave to amend must *move* the court pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and attach a copy of the proposed amendment or set forth its substance. *See Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1163 (11th Cir. 2019); *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1361–62 (11th Cir. 2006). Assuming Johnson's requests in his briefing constitute "the functional equivalent of a motion," Johnson did not include the proposed amendment or its substance in his briefing. *See id.* It is thus within the court's discretion to deny Johnson the opportunity to amend, particularly following a "repeated failure to cure deficiencies by amendments previously allowed." *See United States ex rel. Atkins*, 470 F.3d at 1362; *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008). The court has already allowed Johnson an opportunity to amend in response to Sheriff Williamson's first motion to dismiss, *see* docs. 17, 21, and sees no reason to do so again.

**DONE** the 30th day of August, 2021.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE